**IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **LEAH A. DERAMUS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | |
| | * | **CASE NO. 2:08-cv-23-MEF** |
| **SAIA MOTOR FREIGHT LINE, LLC,** | * | |
| **ADRIAN L. BOUNDS, and MARIN** | * | |
| **HARRIS,** | * | |
| | * | |
| **Defendants.** | * | |

**DEFENDANT MARVIN HARRIS'  AMENDED 12(b)(6) MOTION TO DISMISS AND
ANSWER TO PLAINTIFF'S COMPLAINT**

COMES NOW,  Marvin Harris, a Defendant in the above-styled matter, and moves to amend his Motion to Dismiss the allegations alleged against him in this matter pursuant to Alabama Rules of Civil Procedure 12(b)(6), and files his Amended Answer to Plaintiff's Complaint.  As grounds for this Motion, Marvin Harris shows unto the Court as follows:

**AMENDED MOTION TO DISMISS**

**NARRATIVE STATEMENT OF UNDISPUTED FACTS**

1.      On December 1, 2007, Leah A. Deramus filed a lawsuit in the Circuit Court of Autauga County, Alabama.  The named parties in this Complaint are SAIA Motor Freight Line, LLC ("SAIA"), Adrian L. Bounds ("Bounds") and Marvin Harris ("Harris").   (Complaint attached hereto Exhibit A).  It is Plaintiff's allegations in this Complaint that on December 3, 2005, she was traveling I-65 northbound at or around mile marker 74 in Escambia County, Alabama when Defendant Bounds (negligently and/or wantonly) caused the SAIA tractor and

trailer to run Plaintiff off the road.  It is further Plaintiff's allegation that she sustained injuries as a result of the alleged accident.  (Id.)

2.       Bounds was a line-haul driver for SAIA at the time of the subject accident.  (Id.) Harris was not the SAIA Birmingham terminal manager at the time of the alleged accident. (Affidavit of Marvin Harris attached hereto as Exhibit "B").   However, he is currently the SAIA Birmingham terminal manager and a citizen of the State of Alabama.  (Exhibits "A" and "B").

3.       Bounds was part of a team of drivers making the route from the Houston, Texas to Birmingham, Alabama SAIA Terminals.   (Affidavits of Chad Richard and Adrian Bounds, attached hereto as Exhibits "C" and "D" respectively, and excerpts from Adrian Bounds' Log Book attached hereto as Exhibit "E").

4.       The allegations alleged by Plaintiff against Harris are as follows:

•       Harris did not prevent Bounds from "attempting to make a 2-day trip in one day from Houston to Birmingham," which violated the Federal DOT hours of operation, and subjected a tired driver to the roads of Alabama.

•       "Harris did not notify authorities or follow post-accident procedures required and generally accepted standards, Federal regulations or State laws."

(Exhibit "A").

5.       These allegations of Plaintiff caused her to file a Complaint against Harris and other Defendants for negligent wanton conduct and outrage.

## LEGAL ARGUMENTS

**A.       Harris had no management responsibility for Bounds, and therefore, cannot be liable for Plaintiff's claims**.

Harris, was not in a position to manage or supervise Bounds as to the hours of operation of the truck he drove for SAIA.   (Exhibits A and Affidavit of Thomas Hassard attached hereto as Exhibit "F").   Even if a destination terminal manager for SAIA did have managerial responsibility over a line-haul driver originating from a different terminal, Harris was not the terminal manager in Birmingham at the time of the accident.   Bounds was a line-haul driver based out of the Houston, Texas region (Exhibits C, D, & F).   The parties having management responsibility for Bounds would have been his originating terminal manager and line-haul manager out of the Houston terminal.  (Id.)  At no time has Harris ever been in the position to have management responsibility over Bounds during his employment with SAIA.  Harris was not the terminal manager in Birmingham until approximately ten (10) months after Plaintiff's alleged accident.  (Exhibit "B").

    B.    **Bounds was not in violation of the FDOT hours of operation**.

It is unknown what specific FDOT hours of operation Plaintiff is alleging in her Complaint that Bounds violated.  However, the U. S. Department of Transportation and Federal Motor Carrier Safety Administration has determined that a driver of a property-carrying commercial vehicle cannot drive more than the following maximum driving times:

    (1)    More than 11 accumulative hours following 10 consecutive hours off-duty; or

    (2)    for any period after the end of the 14th hour after coming on duty following 10 consecutive hours off-duty.

*Federal Motor Carrier Safety Regulations*, Sec. 395.3 Maximum Driving Time for Property-Carrying Vehicles.

Bounds was driving as part of a team of drivers with Chad Richard on the day of the alleged incident. (Exhibits C, D, & E). They were driving the route from Houston, Texas to Birmingham, Alabama, which is approximately a 661 mile trip. (Maps of driving route attached hereto as Exhibit "G"). The estimated drive time for this trip is 10 hours, 35 minutes. (Id.). Therefore, the route that was being driven by Bounds and his team driver on the day of the alleged incident would have been a two (2) day trip as alleged by Plaintiff, but the trip was made by a team of two (2) drivers. The SAIA team of drivers, Richard and Bounds, did not violate the FDOT maximum driving time of eleven (11) cumulative hours following ten (10) consecutive hours off-duty, since the trip itself was not a route that took eleven (11) hours to travel. Therefore, Bounds, was not in violation of any federally regulated hours of operation for property-carrying commercial motor vehicles on the day in question. Even if Harris had been the Birmingham terminal manager at the time of Plaintiff's accident, there was not a violation of any FDOT hours of operation to be reported by Harris.

C.     **Harris had no knowledge of Plaintiff's alleged accident for him to have notified authorities or followed post-accident procedures for said accident.**

Plaintiff's accident is being alleged to have occurred on I-65 northbound near Escambia County, Alabama. (Exhibit A). She alleges that Bounds was driving a SAIA truck that ran her off the road on I-65 northbound on December 3, 2005. (Id.) However, Bounds and his team driver never traveled on I-65 northbound during their normal weekly routes from Houston, Texas to Birmingham, Alabama. (Exhibits C, D, & E). Bounds could not have caused or even known about Plaintiff's alleged accident. Therefore, even if Harris had been the Birmingham terminal manager on December 3, 2005, Bounds & Richard would not have known about the accident

since the SAIA drivers did not travel on I-65 the day in question (Id.).  If Harris had no knowledge of the Plaintiff's accident, how can he be negligent/wanton and/or acting outrageously for not reporting said accident.  These claims of Plaintiff are claims that are impossible to seek relief from Harris.  It is fraudulent to name Harris as a defendant in this matter based on allegations of him not notifying authorities or following post-accident procedures required under generally accepted standards, federal regulations or state laws when Harris had no way of knowing about Plaintiff's accident anytime before SAIA was served with Plaintiff's Complaint.

> D.      **Plaintiff's claims for Count I and Count VII against Harris fail to state a claim which relief can be granted.**

Plaintiff brought this action against Harris asserting claims of negligence/wanton conduct and outrage.  Since Harris was not the Birmingham terminal manager at the time of the accident, Plaintiff's allegations are frivolous.  Furthermore, the terminal manager in Birmingham would have no managerial responsibility over Bounds and his team driver; Bounds and his driver were in no violation of hours of operation for driving property-carrying commercial vehicles; and it was impossible for Harris to know of Plaintiff's alleged motor vehicle accident in order to report said accident.  Therefore, all claims asserted against Harris in Counts I and VII of Plaintiff's Complaint fail as a matter of law.

WHEREFORE, THE PREMISES considered, Harris moves this Honorable Court to dismiss all claims alleged against him, with prejudice, and all other remedies deemed just.

## AMENDED ANSWER AND AFFIRMATIVE DEFENSES

Plaintiff's Complaint fails to state any claim upon which relief can be granted from Harris. However, in the event that the Court finds that there are claims upon which relief can be granted, Harris files the following Amended Answer to Plaintiff's Complaint:

## JURISDICTION/VENUE

1.     This Defendants denies that the Plaintiff resided in Pratville, Autauga County, Alabama at the time of the accident made the basis of this lawsuit. The Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1 of the Plaintiff's Complaint.

2.     This Defendants admits that SAIA is a corporation with its principal office in Georgia and that it does business in Alabama. Defendants deny the remaining allegations in Paragraph 2.

3.     This Defendants admits that Adrian L. Bounds ("Bounds") was a driver for SAIA on December 3, 2005. This Defendants further admits that one of Bounds routes at the time of the accident was the Houston to Birmingham route. Bounds is a resident of Texas. This Defendant denies the remaining allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.     This Defendant denies that he was the terminal manager for SAIA at the Birmingham terminal on December 3, 2005. However, this Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4 of Plaintiff's Complaint.

5.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Plaintiff's Complaint.

6.      This Defendant denies the allegations contained in Paragraph 6 of Plaintiff's Complaint.  The Plaintiff did not reside in Autauga County, Prattville, Alabama at the time of the alleged accident.   Furthermore, Defendant SAIA does not, nor have they ever, conducted business by agent in Autauga County, Prattville, Alabama.

## STATEMENT OF FACTS

7.      This paragraph makes no allegations against this Defendant.  However, to the extent that any response is necessary, denied.

8.      This paragraph makes no allegations against this Defendant.  However, to the extent that any response is necessary, denied.

9.      Denied.

10.      Denied.

11.      This Defendant denies the allegations contained in Paragraph 11 of the Plaintiff's Complaint. This denial also pertains to sub-parts (a) through (e) of Paragraph 11.

## COUNT I
## NEGLIGENT AND/OR WANTON CONDUCT
### (Against All Defendants)

12.      This Defendant restates and incorporates by reference all responses to the preceding paragraphs herein.

13.      This paragraph makes no allegations against this Defendant, however to any extent any response is necessary, denied.

14.      Denied.

15.      Denied.

7

**COUNT II**
**NEGLIGENT AND/OR WANTON ENTRUSTMENT**
**(Against SAIA)**

16.-18. Paragraphs 16 through 18 of Plaintiff's Complaint make no allegations against this Defendant, however to the extent that any response is necessary, denied.

**COUNT III**

**NEGLIGENT AND/OR WANTON HIRING, SUPEERVISION AND TRAINING**
**(Against SAIA)**

19. – 22.    Plaintiff's Complaint makes no allegations against this Defendant, however, to the extent that any response is necessary, denied.

**COUNT IV**

**VICARIOUS LIABLITY**
**Against SAIA**

23.-26.  Plaintiff's Complaint makes no allegations against this Defendant, however, to the extent that any response is necessary, denied.

24.    The Defendants admit that SAIA was the employer of Bounds at the time of the subject accident.  Defendants deny the remaining allegations contained in Paragraph 24 of the Plaintiff's Complaint.

**COUNT V – COUNT VI**
**OMITTED IN PLAINTIFF'S COMPLAINT**

<u>**COUNT VII**</u>
<u>**OUTRAGE**</u>
<u>**Against SAIA**</u>

27.     This Defendant restates and incorporates by reference his responses to Paragraphs 1 through 26 of the Plaintiff's Complaint as if fully set out herein.

28.     Denied.

29.     This paragraph makes no allegations against this Defendant, however to the extent that any response is necessary, denied.

30.     Denied.

<u>**AFFIRMATIVE DEFENSES**</u>

<u>**FIRST AFFIRMATIVE DEFENSE**</u>

The Plaintiff's claim fails to claim against this Defendant upon which relief can be granted.

<u>**SECOND AFFIRMATIVE DEFENSE**</u>

This Defendant asserts that this action was brought in an improper venue and that venue should be in another district.   This Defendant reserves the right to file a motion transferring venue where it is proper.

<u>**THIRD AFFIRMATIVE DEFENSE**</u>

This Defendant avers that the Plaintiff was herself guilty of negligence on the assertions complained of, and/or the Plaintiff's own negligence proximately caused or proximately contributed to cause her alleged injuries and damages.

## FOURTH AFFIRMATIVE DEFENSE

The injuries and damages alleged by the Plaintiff were proximately caused by the Plaintiff's own assumption of the risk; hence the Plaintiff ought not recover.

## FITFTH AFFIRMATIVE DEFENSE

This Defendant avers that the Plaintiff had the last clear chance to avoid peril and that Plaintiff's failure to take reasonable action to avoid peril, proximately caused her alleged injuries and damages.

## SIXTH AFFIRMATIVE DEFENSE

This Defendant avers that the Plaintiff failed to mitigate her damages and hence, ought not recover from this Defendant.

## SEVENTH AFFIRMATIVE DEFENSE

This Defendant avers that the Plaintiff's allegations fail due to their impossibility.

## EIGHTH AFFIRMATIVE DEFENSE

The injuries of which the Plaintiff complains are not recoverable against this Defendant.

## NINTH AFFIRMATIVE DEFENSE

This Defendant met the requisite standard of care.

## TENTH AFFIRMATIVE DEFENSE

The acts of this Defendant did not proximately cause or contribute to the injuries complained of by the Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

The accident and alleged injuries to the Plaintiff were caused by others for whom this Defendant had no legal liability or responsibility.

## TWELFTH AFFIRMATIVE DEFENSE

This Defendant avers that any award of punitive damages in this case would be in violation of the constitutional safeguards provided under the Constitution of the United States of America.

## THIRTEENTH AFFIRMATIVE DEFENSE

The claim of Plaintiff for punitive damages cannot be sustained, because any award of punitive damages under Alabama law, without bifurcating the trial and trying all punitive damages issues only if and after liability on the merits has been found, would violate the Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and the due process provisions of the Alabama Constitution and would be improper under the common law and public policies of the State of Alabama and under applicable court rules and statutes.

## FOURTEENTH AFFIRMATIVE DEFENSE

Each claim for punitive damages, on its face and/or as applied in this case, is in violation of the Fifth Amendment of the Constitution of the United States; of the right to counsel provided by the Sixth Amendment of the Constitution of the United States; of the right to trial by jury of the Seventh Amendment of the Constitution of the United States; of the proportionality principles contained in the Eighth Amendment of the Constitution of the United States; the Due

Process Clause of the Fourteenth Amendment of the <u>Constitution of the United States</u>; and Article 1, Sections, 1, 2, 6, 11, 13, 15, 27 and 35 of the <u>Constitution of Alabama</u> of 1901, and is improper under the common law and public policies of the State of Alabama and under applicable court rules and statutes for the following reasons, jointly and separately:

1.    There are no standards provided by Alabama law for the imposition of punitive damages, and therefore, this defendant has not been put on notice and given the opportunity to anticipate punitive liability and/or the potential size of an award and to modify or conform their conduct accordingly;

2.    The procedures to be followed would permit an award of punitive damages against this defendant upon the satisfaction of a burden of persuasion (standard of proof) less than that applicable to the imposition of criminal sanctions for equal culpability;

3.    The procedures to be followed would permit the award of multiple punitive damages for the same act or omission;

4.    There are no provisions or standards for clear and consistent appellate review of any award of punitive damages against this Defendant under present Alabama law;

5.    The standards of conduct upon which punitive damages are sought against this Defendant are vague and ambiguous;

6.    The procedures used by Alabama courts and the guidelines given to the jurors; jointly and separately, are vague and ambiguous;

7.    The procedures used by Alabama courts and guidelines given to jurors, jointly and separately, are vague and ambiguous and, thus, impermissibly allow jurors broad, unlimited, and undefined power to make determinations on their notations of what the law should be instead of what it is;

8.    The procedures under which punitive damages are awarded and instructions used in Alabama courts, jointly and separately, are vague and ambiguous and, thus fail to eliminate the effects of, and to guard against, impermissible juror passion;

9.      Present Alabama law does not provide for sufficiently objective and specific standards to be used by the jury in its deliberations on whether to award punitive damages and, if so, on the amount to be awarded;

10.     Present Alabama law does not provide a meaningful opportunity for challenging the rational basis for, and any excessiveness of, any award of punitive damages;

11.     Present Alabama law does not provide for adequate and independent review by the trial court and the appellate court of the imposition of punitive damages by a jury or of the amount of any punitive damages awarded by a jury;

12.     The present Alabama procedures fail to provide a constitutional and reasonable limit on the amount of any punitive award against this Defendant;

13.     The present Alabama procedures may permit the admission of evidence relative to punitive damages in the same proceedings during which liability is determined;

14.     The present Alabama procedures permit the imposition of joint and several judgments against multiple co-defendants for different acts or degrees of wrongdoing or culpability;

15.     An award of punitive damages would compensate plaintiff for elements of damage not otherwise recognized by Alabama law.

## FIFTEENTH AFFIRMATIVE DEFENSE

The award of punitive or extra-contractual damages on the basis of vicarious liability for the conduct of others violates the Fifth, Eighth and Fourteenth Amendments of the United States Constitution as well as the Alabama Constitutional provisions set forth above.

## SIXTHTEENTH AFFIRMATIVE DEFENSE

The imposition of punitive damages deprives this Defendant of the right to equal protection under the laws provided in the Fifth and Fourteenth Amendments of the <u>Constitution</u>

of the United States and in Article 1, Sections 1, 6 and 22 of the Constitution of Alabama of 1901 for the following reasons, jointly and separately:

1.    The plaintiff seeks punitive damages in excess of the respective maximums established by the Alabama Legislature in ''13A-5-11 and 13A-5-12, Code of Alabama (1975), jointly and separately, whereas those charged under the Criminal Code for similar or identical culpability would have the benefit of the cited code provisions;

2.    The procedures to be followed would permit the awarding of punitive damages against this defendant upon the satisfaction of a burden of persuasion (standard of proof) less than the applicable standard in criminal cases for criminal sanctions involving similar or identical levels of culpability;

3.    The absence of sufficiently specific and objective standards for the imposition of punitive damages fails to insure the equality of treatment between and among similarly situated civil defendants;

4.    Punitive damages are penal in nature and the defendants, without procedural protection, is compelled to disclose documents and/or other evidence without constitutional safeguards against self-incrimination whereas persons charged under criminal provisions for acts or omissions of similar culpability are protected from being compelled to disclose documents and/or other evidence by constitutional procedures and safeguards available in criminal cases.

## SEVENTHEENTH AFFIRMATIVE DEFENSE

The imposition of punitive damages in this case is unconstitutional under the Fifth and Fourteenth Amendments of the Constitution of the United States and Article 1, Section 6 of the Constitution of Alabama of 1901 because punitive damages are penal in nature and this defendant is compelled to disclose documents and/or other evidence without constitutional safeguards against self-incrimination.

## <u>EIGHTHTEENTH AFFIRMATIVE DEFENSE</u>

By virtue of Alabama Code '6-11-20 (1975), punitive damages are not recoverable in this case.

## <u>NINETEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff cannot recover punitive damages against this Defendant because such an award, which is penal in nature, would violate this Defendant's constitutional rights protected under the Alabama Constitution of 1901, as amended (the "Alabama Constitution"), and the <u>Constitution of the United States</u> ("the United States Constitution"), unless this Defendant is afforded the same procedural safeguards as are due a criminal defendant, including, but not limited to, the right to avoid self- incrimination, the right to forego production and disclosure of incriminating documents, and the right to the requirement of a level of proof beyond a reasonable doubt.

## <u>TWENTIETH AFFIRMATIVE DEFENSE</u>

Subjecting this Defendant to punitive damages, or affirming an award of punitive damages against this Defendant in this case, would amount to and constitute a denial of due process as afforded by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and by the Due Process Clause of Article 1, Section 13 of the Alabama Constitution, as a deprivation of property without due process, or standards or criteria of due process, based upon the following grounds and circumstances, separately and severally assigned:

(a)    Any award of punitive damages against this Defendant under the evidence in this case would necessarily be based upon an evidentiary standard no higher or more than a standard of simple negligence, and not upon a standard of proof beyond a reasonable doubt; (b) there is a

lack of reasonable standards necessary to instruct the jury on the propriety and amount of any punitive damages award, and such an award is subject to no predetermined limits; (c) use of either Alabama Pattern Jury Instruction 11.03 or 11.18, or both, in instructing the jury as to the award of punitive damages, and the amount of such an award, does not provide sufficient guidance or standards for the award or amount of punitive damages; (d) any punitive damages award would not be subject to post-trial and appellate review on the basis of suitable and sufficient objective standards and criteria; (e) the power and authority imposed upon the jury under Alabama law as to the amount of punitive damages award is so relatively unfettered that there is lacking any reasonable or logical standard, uniform criteria, or guidance in the assessment of the amount of the award of punitive damages; (f) under Alabama law and procedure, there is no objective, logical, or rational relationship between the award, or the amount of the award, of punitive damages and this Defendant's alleged wrongful or culpable conduct; (g) under Alabama law and procedure, there is no objective, logical, or rational relationship between the award, or the amount of the award of punitive damages and the interests or goals of the State of Alabama referable to the imposition or allowance of punitive damages; (h) in the event that a single verdict is mandated against all (or two or more) defendants herein for an award of punitive damages in this case, such a single verdict would be imposed regardless of the degree of culpability of a particular defendant, and such a nonapportionment rule could result in a joint and several verdict against all defendants whereby punitive damages could be assessed against one defendant based in part upon the culpability of another defendant, and such a joint verdict in a single amount could be enforced against this Defendant for any portion of that judgment regardless of this Defendant's culpability, or relative culpability; (i) should the Court

require the award of punitive damages in a single, joint and several verdict of one amount, an adoption of this nonapportionment rule would be contrary to the objective of punishing specific misconduct, and would be contrary to the objective of assessing punitive damages according to culpability of conduct; (j) where a joint and several punitive damages award is mandated to be in a single amount against each defendant, such a rule additionally violates a defendant's right to trial by jury as the jury would be prohibited from apportioning damages against the defendant according to the degree of culpability of the conduct of the respective defendants; (k) Alabama procedures, pursuant to which amounts of punitive damages are awarded, permit the imposition of different penalties for the same or similar acts; (l) under Alabama law and procedures governing the award and assessment of punitive damages, there is no objective, logical, or reasonable standard or criteria which governs the award, or the amount of the award, of punitive damages; (m) the procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of the award against this Defendant; (n) the procedures pursuant to which punitive damages are awarded are unconstitutionally vague; (o) the procedures pursuant to which punitive damages are awarded fail to provide a clear post-trial or appellate standard of review for an award of punitive damages; (p) the procedures pursuant to which punitive damages are awarded may permit the admission of evidence relative to punitive damages in the same proceedings during which liability and compensatory damages are determined; and (q) an award of punitive damages would constitute an arbitrary and capricious taking of property of this Defendant without due process of law.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Imposition of punitive damages in this case against this Defendant would contravene the Commerce Clause of the United States Constitution in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

To award punitive damages against this Defendant in this case would have a chilling effect upon this Defendant's rights to open access to the courts of this State, in violation of the United States Constitution and the Alabama Constitution, separately and severally.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

In the event that any portion of a punitive damages award against this Defendant in this case were to inure to the benefit of the State of Alabama, or any governmental or private entity other than plaintiff, such an award would violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution and Article 1, Section 15, of the Alabama Constitution.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Based upon Alabama procedures relative to punitive damages, which provide no objective, logical, or reasonable standards or criteria which govern the award, and the amount of the award, of punitive damages, this Defendant is denied equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution, and Article 1, ' ' 1, 6, and 22 of the Alabama Constitution, separately and severally.

## <u>TWENTY-FIFTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claim for punitive damages violates the rights of this Defendant to due process and equal protection of the law as guaranteed by the Constitution of the United States and the Alabama Constitution in that the procedure for post-trial review of punitive damages set forth in <u>Hammond v. City of Gadsden</u> and <u>Green Oil Company v. Hornsby</u> is unconstitutionally vague and inadequate in the following respects:

      (a)        The <u>Hammond</u> and <u>Green Oil</u> procedure provides no clearly defined standard for courts to apply in reviewing punitive damages; (b) the <u>Hammond</u> and <u>Green Oil</u> procedure provides inadequate review as to the issues of need to deter, whether deterrence has been accomplished, and whether punishment is appropriate for this Defendant; (c) the <u>Hammond</u> and <u>Green Oil</u> procedure provides inadequate review and a vague standard regarding the relationship of the punitive damage award to the harm; (d) the <u>Hammond</u> and <u>Green Oil</u> procedure does not address nor cure the lack of guidelines given the jury in the assessment of punitive damages; (e) this procedure is inadequate in that the trial court according to <u>Hammond</u> and <u>Green Oil</u> "may" take certain factors into account and these procedures lack predictable and objective standards of review, allow for inconsistent application of the factors, and allow for unpredictable and inconsistent results; and (f) the <u>Hammond</u> and <u>Green Oil</u> procedure fails to provide

definite and meaningful constraints on jury discretion in awarding punitive

damages.

## **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

The Plaintiff is estopped from recovery as a result of her own actions.

## **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff cannot recover punitive damages in excess of the caps on such damages set forth

in Ala. Code § 6-11-21.

Respectfully submitted,


*/s/  William E. Shreve, Jr.*
COOPER C. THURBER       (THUR4686)
WILLIAM E. SHREVE, JR.  (SHREW3946)
K. AMANDA HERNDON    (HER048)
Attorneys for Defendants SAIA Motor
Freight Line, LLC; Adrian L. Bounds; and
Marvin Harris


OF COUNSEL:

LYONS, PIPES & COOK, P.C.
2 North Royal Street (36602)
P.O. Box 2727
Mobile, AL  36652
P: (251) 432-4481
F: (251) 433-1820
Email: CCT@LPClaw.com
           WES@LPClaw.com
           KAH@LPClaw.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a copy of the foregoing pleading has been served on all known counsel of record via electronic filing on this the **29th** day of February, 2008.

Josh Wright, Esq.
HOLLIS & WRIGHT, P.C.
505 North 20th Street, Suite 1500
Birmingham, Alabama 35202

Jerry L. Thornton, Esq.
120 LaFayette Street
P. O. Box 759
Hayneville, Alabama 36040

*/s/ William E. Shreve, Jr.*
WILLIAM E. SHREVE, JR.

ELECTRONICALLY FILED
12/1/2007 2:24 PM
CV-2007-900132.00
CIRCUIT COURT OF
AUTAUGA COUNTY, ALABAMA
WHIT MONCRIEF, CLERK

## IN THE CIRCUIT COURT OF AUTAUGA COUNTY, ALABAMA

| | |
|---|---|
| LEAH A. DERAMUS, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Civil Action No. _____ |
| | ) |
| SAIA MOTOR FREIGHT LINE, LLC, a | ) |
| Corporation, ADRIAN L. BOUNDS, an | ) |
| individual, MARVIN HARRIS, an individual, | ) |

and Fictitious Defendants No. 1, whether singular or plural, the owner(s) of the tractor and trailer which collided with or forced plaintiff off the road causing plaintiff's injuries and damages on the occasion made the basis of this suit; No. 2, whether singular or plural, the driver of the tractor and trailer which collided with or forced plaintiff off the road causing plaintiff's injuries and damages on the occasion made the basis of this suit; No. 3, whether singular or plural, that entity or those entities who or which afforded any insurance coverage to either the driver(s) and/or the owner(s) of the tractor or trailer involved in the occurrence made the basis of this lawsuit; No. 4, whether singular or plural, that entity or those entities who or which provided maintenance and upkeep on the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; No. 5, whether singular or plural, that entity or those entities who or which did any repair work on the motor vehicle(s) involved in the occurrence made the basis of this complaint; No. 6, whether singular or plural, that entity or those entities who or which manufactured and/or distributed the motor vehicle(s) involved in the occurrence made the basis of this lawsuit, or any of the component parts thereof; No. 7, whether singular or plural, that entity or those entities who or which were the master, principal or employer of the driver of the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; No. 8, whether singular or plural, that entity or those entities for whom the driver of the motor vehicle which ran off the road or collided with the vehicle plaintiff was driving and was operating and/or performing some type of service or employment duty at the time of this collision; No. 9, whether singular or plural, that entity or those entities who or which negligently entrusted the motor vehicle(s) involved in the occurrence made the basis of this lawsuit to the driver(s) thereof at the time of said occurrence; No. 10, whether singular or plural, that entity or those entities on whose behalf the vehicle or vehicles involved in the collision made the basis of this lawsuit was being operated at the time of said occurrence; No. 11, whether singular or plural, that entity or those entities who or which was responsible for the condition or state of repair of the vehicle(s) involved in the occurrence made the basis of this lawsuit; No. 12, whether singular or plural, that entity or those entities, that individual or those individuals who or which repaired, altered, or maintained the vehicle(s) involved in the occurrence made the basis of this lawsuit; No. 13, whether singular or plural, that entity or those entities who or which issued, or had a duty to issue, warnings or instructions regarding the use or operation of any of the vehicles involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith; No. 14, whether singular or plural, that entity or those entities who or which tested, inspected, approved, or issued any approval of any of the vehicles involved in the occurrence



EXHIBIT
*A*

made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith; No. 15, whether singular or plural, that entity or those entities who or which had supervisory authority relating to the maintenance, operation, or to the selection, training and hiring of drivers of any of the vehicles involved in the occurrence made the basis of this lawsuit; No. 16 whether singular or plural, that entity or those entities who or which issued any policy of insurance which provided coverage for plaintiff on the occasion made the basis of this lawsuit (including, but not limited to, uninsured motorist coverage, excess or umbrella coverage, etc.); No. 17, whether singular or plural, that entity or those entities who or which provided any insurance coverage for any of the motor vehicles involved in the occurrence made the basis of this lawsuit, for the driver of each respective motor vehicle or for any of the named fictitious parties defendant listed or described herein; No. 18, whether singular or plural, that entity or those entities other than those entities described above whose breach of contract or warranty contributed to cause the occurrence made the basis of this lawsuit; No. 19, whether singular or plural, that entity or those entities other than those entities described above, which is the successor in interests of any of those entities described above; No. 20, whether singular or plural, that entity or those entities other than those entities described above, which was the predecessor corporation of any of the entities described above; No. 21, whether singular or plural, that individual or those individuals, that entity or those entities who was or were responsible for training, supervising, hiring or monitoring drivers for defendant SAIA; No. 22, whether singular or plural, that entity or those entities, that individual or those individuals, described above whose negligence, wantonness, recklessness, breach of contract, fraud, or other wrongful conduct contributed to cause the occurrence made the basis of this lawsuit. Plaintiff avers that the identities of the fictitious parties defendants is otherwise unknown to Plaintiff at this time, or if their names are known to Plaintiff at this time, their identities as proper parties defendant is not known to Plaintiff at this time notwithstanding a diligent search and investigation, but their true names will be substituted by amendment when ascertained;                )

                                                           )

        Defendants.                   )

## COMPLAINT

### JURISDICTION/VENUE

1.     Plaintiff, Leah A. DeRamus (known hereafter as "Plaintiff Leah DeRamus" or "Plaintiff") is over the age of nineteen (19) years, and resided at 109 Holly Lane, Prattville, Autauga County, Alabama, 36066 at the time of the accident made the basis of this lawsuit.

2.     Defendant, SAIA Motor Freight Line, LLC (hereafter "SAIA"), is a

2

corporation with its principal office in Georgia. Upon information and belief, SAIA does business by agent in Alabama and specifically in Autauga County, Alabama.

3.    Defendant, Adrian L. Bounds (hereafter "Bounds") was a driver for SAIA on December 3, 2005, and drove the Houston to Birmingham route. Upon information or belief, Bounds is a resident of Texas. Attached hereto as "Exhibit A" is a dispatch record dated December 3, 2005 which identifies Bounds as the SAIA driver located in the same location as Plaintiff at the time of her accident.

4.    Defendant, Marvin Harris (hereafter "Harris") was a terminal manager/director for SAIA in the Birmingham terminal on December 3, 2005. Upon information and belief, Harris is a resident of the State of Alabama.

5.    Fictitious Party Defendants 1-22 are unknown at this time, but will be substituted when ascertained. Hereafter, the term "Defendants" includes those named Defendants and those Fictitious Party Defendants 1-22.

6.    Venue is proper in this County as Plaintiff resided in Prattville, Alabama at the time of her accident, and Defendant SAIA did business by agent (i.e., its drivers) in Autauga County, Alabama.

## STATEMENT OF FACTS

7.    On or about December 3, 2005 at 11:50 AM, upon a public roadway, to-wit, I-65 in the northbound direction at or around mile marker 74 in Escambia County, Alabama, Defendant Bounds of SAIA did negligently and/or

3

wantonly cause his tractor and trailer to run Plaintiff, Leah DeRamus, off the road.

8.    Defendant Bounds entered into Plaintiff's lane of traffic forcing Plaintiff's vehicle off the road wherein Plaintiff lost control over her vehicle and flipped multiple times.  Defendant Bounds did not stop after the accident took place, effectively leaving Plaintiff trapped in her vehicle on the side of the road to die.

9.    Upon information and belief, Defendant Bounds was attempting to make a two day trip in one day from Houston to Birmingham.  The terminal manager/director for his destination, Harris, did not prevented such action which violated the Federal DOT hours of operation, and subjected a tired driver to the roads of Alabama.

10.   Upon information or belief, Harris did not notify authorities or follow post-accident procedures required under generally accepted standards, federal regulations or state laws.

11.   As a result of the accident made the basis of this lawsuit, Plaintiff suffered permanent and life threatening injuries as follows:

   a. Plaintiff was caused to suffer severe injuries to her eyes, shoulders, and hands, which required surgical intervention.

   b. Plaintiff was caused to suffer severe and permanent disfiguration of her scalp, which required surgical intervention.

   c. Plaintiff was caused and will in the future be caused to suffer great physical pain, emotional distress, anguish, lost wages and lost ability to earn.

   d. Plaintiff was caused and will in the future be caused to expend large sums of money in the nature of doctor, hospital, drug, rehabilitation, medication, and

4

other medical expenses in an effort to heal and cure her injuries.

    e.   Other injuries and damages as allowed under Alabama law.

**COUNT I**
**NEGLIGENT/WANTON CONDUCT**
**(Against All Defendants)**

12.    Plaintiff adopts and incorporates by reference all allegations of the preceding paragraphs herein.

13.    At the aforesaid time and place, and for some time prior thereto, Defendants, including Fictitious Party Defendants 1-22, were operating motor vehicles in violation of the law and below the applicable standard of care in pulling over into Plaintiff's lane of operation, and negligently and/or wantonly caused the accident with Plaintiff Leah DeRamus and then left the scene of such accident.

14.    Defendants, including Fictitious Party Defendants, also allowed Defendant Bounds to operate a tractor and trailer longer than the allowable hours of operation, failed to notify authorities or help Plaintiff after her injuries, and acted inconsistent with post-accident legal, regulatory or common law requirements, once they became aware that Defendant Bounds had run Plaintiff off the road.

15.    Said conduct was the proximate cause of Plaintiff Leah DeRamus' injuries as described herein.

WHEREFORE, Plaintiff Leah DeRamus demands judgment against all defendants jointly and severally, including fictitious party defendants, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate Plaintiff Leah DeRamus for the above

5

described damages and injuries, together with interest from the date of the incident and the costs of the proceeding.

## COUNT II
## NEGLIGENT AND/OR WANTON ENTRUSTMENT
### (Against SAIA)

16.     Plaintiff adopts and incorporates by reference all allegations of the preceding paragraphs herein.

17.     Defendant SAIA negligently and/or wantonly entrusted or loaned the operation of its tractor and trailer to Defendant Bounds, and Fictitious Party Defendants 1-22, after having notice that such driver was incompetent and/or incapable to operate his vehicle.

18.     Such conduct was the proximate cause of Leah DeRamus' injuries

WHEREFORE, Plaintiff Leah DeRamus demands judgment against defendant SAIA, including fictitious party defendants, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate Plaintiff Leah DeRamus for the above described damages, together with interest from the date of the incident and the costs of the proceeding.

## COUNT III
## NEGLIGENT AND/OR WANTON HIRING, SUPERVISION AND TRAINING
### (Against SAIA)

19.     Plaintiff adopts and incorporates by reference all allegations of the preceding paragraphs herein.

20.     Defendant SAIA negligently and/or wantonly failed to properly hire, supervise and/or train Defendant Bounds, and Fictitious Party Defendants 1-22, on proper lane changing, standard operating procedures to follow when an accident is

6

caused (e.g., do not leave the scene of an accident), and/or proper operation and speed of aforesaid vehicle when aforesaid vehicle is in operation.

21.    Defendant SAIA, and Fictitious Party Defendants 1-22, additionally negligently and/or wantonly failed to properly interview, obtain and retain drivers that understood or followed the applicable DOT, State regulations or laws, or simple good driving practices like driver Bounds.

22.    Such conduct was the proximate cause of Leah DeRamus' injuries.

WHEREFORE, Plaintiff Leah DeRamus demands judgment against defendant SAIA, including fictitious party defendants, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate Plaintiff Leah DeRamus for the above described damages, together with interest from the date of the incident and the costs of the proceeding.

## COUNT IV
### VICARIOUS LIABILITY
**(Against SAIA)**

23.    Plaintiff adopts and incorporates by reference all allegations of the preceding paragraphs herein.

24.    Defendant SAIA served as the employer and/or master of Defendant Bounds, and fictitious party defendants 1-22.

25.    Defendant Bounds, and fictitious party defendants 1-22, were in the line and scope of employment on December 3, 2005 at or around 11:50 AM on I65 Northbound. Defendant Bounds was acting for the benefit of, on behalf of, and at the direction of, Defendant SAIA at the time of the accident made the basis of this lawsuit.

7

26.    Defendant SAIA is vicariously liable for the acts of the Defendant Bounds and
fictitious party defendants 1-22 at the time of the accident made the basis of
this lawsuit.

WHEREFORE, Plaintiff Leah DeRamus demands judgment against defendant SAIA,
including fictitious party defendants, in a sum of compensatory and/or punitive damages in
excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly
and adequately compensate Plaintiff Leah DeRamus for the above described damages,
together with interest from the date of the incident and the costs of the proceeding.

**COUNT VII**
**OUTRAGE**
**(Against All Defendants)**

27.    Plaintiff adopts and incorporates by reference all allegations of the preceding
paragraphs herein.

28.    Defendants, including Fictitious Party Defendants, acted outrageously and with
the requisite disregard for the safety of Plaintiff Leah DeRamus by leaving her
on the side of the road after causing the accident made the basis of this
lawsuit.

29.    Defendant SAIA, Defendant Bounds, and Fictitious Party Defendants 1-22,
committed acts that were extreme and outrageous as defined by Alabama law.

30.    Such conduct exhibited by all Defendants was the proximate cause of Plaintiff
Leah DeRamus' injuries.

WHEREFORE, Plaintiff Leah DeRamus demands judgment against all defendants
jointly and severally, including fictitious party defendants, in a sum of compensatory and/or
punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury,

which will fairly and adequately compensate Plaintiff Wayne Benton for the above described

damages, together with interest from the date of the incident and the costs of the proceeding.


/s/ Josh J. Wright
JOSH J. WRIGHT, ESQ. (WRI045)
Attorney for Plaintiff

OF COUNSEL:

**HOLLIS, WRIGHT & HARRINGTON, P.C.**
505 North 20th Street, Suite 1500
Birmingham, AL 35202
(205) 324-3600
(205) 324-3636 Facsimile

### JURY DEMAND

Plaintiff requests a trial by struck jury on all issues and counts allowable by law in this
case.


/s/ Josh J. Wright
OF COUNSEL

### REQUEST FOR CERTIFIED MAIL AND SERVICE OF DISCOVERY

The Plaintiff hereby requests that the clerk serve the Defendants by certified mail,

with the attached discovery, return receipt requested, at the following locations:

Adrian L. Bounds
20030 Appaloosa Ridge Drive
Humble, TX 77338

SAIA Motor Freight Line, LLC
C/O The Corporation Company
2000 Interstate Park Dr, Suite 204
Montgomery, AL 36109

MARVIN HARRIS
2701 Republic Blvd.
Birmingham, AL 35214

/s/ Josh J. Wright
OF COUNSEL

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

LEAH A. DERAMUS,                          *
                                          *
        Plaintiff,                        *
                                          *
vs.                                       *
                                          *        CASE NO. 2:08-cv-23-MEF
SAIA MOTOR FREIGHT LINE, LLC,             *
ADRIAN L. BOUNDS, and MARIN               *
HARRIS,                                   *
                                          *
        Defendants.                       *

STATE OF ALABAMA

COUNTY OF *Shelby*

## AFFIDAVIT OF MARVIN HARRIS

BEFORE ME, the undersigned Notary Public in and for said County and said State did personally appear **MARVIN HARRIS**, who upon oath did depose and say as follows:

1.      My name is Marvin Harris.  I am currently the Birmingham Terminal Manager for SAIA Motor Freight Line, LLC ("SAIA").  I am over the age of twenty-one (21) years and have personal knowledge of the facts set forth in this Affidavit.  I am competent to make this Affidavit and to testify in court if called upon to do so.  Furthermore, I am authorized by SAIA to give this Affidavit.  The facts contained herein are true and correct.

2.      My State of residence is Alabama.  I have never had any management responsibility for Defendant Adrian L. Bounds ("Bounds") because he is a line-haul driver for SAIA who is based out of the Houston, Texas Region.  The parties with management



responsibility for Bounds would have been his originating terminal manager and line-haul manager out of the Houston Terminal.

3.    Furthermore, I was not the SAIA Birmingham Terminal Manager at the time of the alleged accident of December 3, 2005. I was not the SAIA Birmingham Terminal Manager until September or October of 2006. This is over a year after the alleged accident occurred.

4.    Furthermore, the Federal Motor Carrier Safety Regulations' maximum allotted driving time for property-carrying vehicles is "(1) no more than 11 cumulative hours following 10 consecutive hours off duty; or (2) for any period after the end of the 14[th] hour after coming on duty following 10 consecutive hours off duty…".

5.    The estimated distance for the approved route by SAIA from Houston, TX to Birmingham, AL is 660 miles. The estimated time for this trip is under eleven (11) hours. Especially, when it is being driven on a Saturday. Even if Bounds had been the only driver of the SAIA truck traveling the Houston to Birmingham route on December 3, 2005, Bounds would not have been in violation of any Federal Motor Carriers Safety Regulations as to the allotted maximum driving time. Therefore, there would have been no violation for me to report had I held management responsibility for Bounds on the day of the alleged accident.

6.    I was never aware of any motor vehicle accident occurring on December 3, 2005, until I was served with the Complaint in this matter on January 31, 2008. Therefore, I could not have reported the alleged accident to any "authorities or followed post-accident procedures required under generally accepted standards, federal regulations or state laws".

7.    Lastly, the approved route of SAIA for its line-haul drivers driving the route from Houston, TX to Birmingham, AL does not call for the drivers to travel on I-65. These drivers are told to travel on Interstate-10 to Interstate-12, and then take Interstate-59 northbound to Interstate-20 in Meridian, Mississippi. They then are approved to take Exit 120 off of Interstate-20 in order to get to the Birmingham terminal. This is another reason why Plaintiff's claims against me completely fail.

8.    None of the Plaintiff's allegations against me are valid claims that a Court could find me liable. Therefore, all properly named parties to the lawsuit are citizens of different states, and this matter should be heard in Federal Court.

Further the Affiant saith not.

_____
**MARVIN HARRIS**
Birmingham Terminal Manager for SAIA Motor Freight Line, LLC.

STATE OF ALABAMA

COUNTY OF SHELBY

Personally appeared before me, the undersigned authority, **MARVIN HARRIS** who being by me first duly sworn, did depose and say that he has read the above and foregoing Affidavit and that the facts stated therein are true and correct.

SUBSCRIBED AND SWORN TO before me on this the 21st day of February, 2008

_____
Notary Public
My Commission Expires

My Commission Expires September 4, 2011

00507104.doc/dln                    3

Prepared By:

*/s/ K. Amanda Herndon*
K. AMANDA HERNDON    (HER048)
Attorney for Defendant, SAIA Motor Freight Line, LLC,
Adrian L. Bounds, and Marvin Harris

OF COUNSEL:

LYONS, PIPES & COOK, P.C.
2 North Royal Street (36602)
P.O. Box 2727
Mobile, AL  36652
P: (251) 432-4481
F: (251) 433-1820
Email: KAH@LPClaw.com

**IN THE UNITED STATE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

LEAH A. DERAMUS,                           *
                                           *
        Plaintiff,                         *
                                           *
vs.                                        *
                                           *       CASE NO. 2:08-cv-23-MEF
SAIA MOTOR FREIGHT LINE, LLC,              *
ADRIAN L. BOUNDS, and MARIN                *
HARRIS,                                    *
                                           *
        Defendants.                        *

STATE OF TEXAS

COUNTY OF Dallas

### AFFIDAVIT OF CHAD RICHARD

BEFORE ME, the undersigned Notary Public in and for said County and said State did personally appear CHAD RICHARD, who upon oath did depose and say as follows:

1.      My name is Chad Richard.  I was a line-haul driver for SAIA Motor Freight Line, LLC ("SAIA") on December 12, 2005.  I am over the age of twenty-one (21) years and have personal knowledge of the facts set forth in this Affidavit.  I am competent to make this Affidavit and to testify in court if called upon to do so.  The facts contained herein are true and correct.

2.      My State of residence is Texas.  At the time of the accident subject of this lawsuit, I was a line-haul driver for SAIA who was based out of the Houston, TX terminal. The parties with management responsibility for me were my originating terminal manager and line-haul manager out of the Houston Terminal.

3.      In August of 2005, Adrian L. Bounds and I began to drive a Saturday



EXHIBIT
C
Blumberg No. 5119

route from the SAIA terminal in Houston, TX to the SAIA terminal in Birmingham, AL. He and I were a team of drivers for this trip. Most of the time, I would drive to Birmingham, AL, while Adrian slept. Then, Adrian would drive from Birmingham, AL back to Houston, TX. This trip took us less than eleven (11) hours, one way.

3.     We never traveled on I-65 when traveling this route. Instead, we drove from Houston, TX on Interstate-10 to Interstate-12 (Baton Rouge, LA). We would then get on Interstate-59, northbound to Interstate-20 in Meridian, Mississippi. We took Exit 120 off of Interstate-20 in order to get to the SAIA Birmingham terminal. This was the route that was recommended to Adrian and me by SAIA on the first day that we began this route in August of 2005.

4.     Chad could not have caused Plaintiff's motor vehicle accident because we did not travel on I-65 on December 3, 2005. Furthermore, we did not even know about Plaintiff's alleged accident until the Plaintiff filed a lawsuit against me.

Further the Affiant saith not.

CHAD RICHARD
SAIA Motor Freight Line, LLC employee


STATE OF TEXAS

COUNTY OF *Dallas*

Personally appeared before me, the undersigned authority, **Chad Richard** who being by me first duly sworn, did depose and say that he has read the above and foregoing Affidavit and that the facts stated therein are true and correct.

SUBSCRIBED AND SWORN TO before me on this the _21_ day of
_February_, 2008

Notary Public
My Commission Expires

Prepared By:

/s/ K. Amanda Herndon
K. AMANDA HERNDON    (HER048)
Attorney for Defendant, SAIA Motor Freight Line, LLC

OF COUNSEL:

LYONS, PIPES & COOK, P.C.
2 North Royal Street (36602)
P.O. Box 2727
Mobile, AL 36652
P: (251) 432-4481
F: (251) 433-1820
Email: KAH@LPClaw.com

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

LEAH A. DERAMUS,                          *
                                          *
        Plaintiff,                        *
                                          *
vs.                                       *
                                          *     CASE NO. 2:08-cv-23-MEF
SAIA MOTOR FREIGHT LINE, LLC,             *
ADRIAN L. BOUNDS, and MARIN               *
HARRIS,                                   *
                                          *
        Defendants.                       *

STATE OF TEXAS

COUNTY OF Harris

## AFFIDAVIT OF ADRIAN L. BOUNDS

BEFORE ME, the undersigned Notary Public in and for said County and said State did personally appear ADRIAN L. BOUNDS, who upon oath did depose and say as follows:

1.      My name Adrian L. Bounds.  I was a line-haul driver for SAIA Motor Freight Line, LLC ("SAIA") on December 12, 2005.  I am over the age of twenty-one (21) years and have personal knowledge of the facts set forth in this Affidavit.  I am competent to make this Affidavit and to testify in court if called upon to do so.  The facts contained herein are true and correct.

2.      My State of residence is Texas.  At the time of the accident subject of this lawsuit, I was a line-haul driver for SAIA who was based out of the Houston, TX terminal. The parties with management responsibility for me were my originating terminal manager and line-haul manager out of the Houston Terminal.

3.      In August of 2005, Chad Richard and I began to drive a Saturday route



EXHIBIT
D

from the SAIA terminal in Houston, TX to the SAIA terminal in Birmingham, AL. He and I were a team of drivers for this trip. Most of the time, Chad would drive to Birmingham, AL, while I slept. Then, I would drive from Birmingham, AL back to Houston, TX. This trip took us less than eleven (11) hours, one way.

3.    We never traveled on I-65 when traveling this route. Instead, we drove from Houston, TX on Interstate-10 to Interstate-12 (Baton Rouge, LA). We would then get on Interstate-59, northbound to Interstate-20 in Meridian, Mississippi. We took Exit 120 off of Interstate-20 in order to get to the SAIA Birmingham terminal. This was the route that was recommended to Chad and I by SAIA on the first day that we began this route in August of 2005.

4.    I could not have caused Plaintiff's motor vehicle accident because I did not travel on I-65 on December 3, 2005. Furthermore, I did not even know about Plaintiff's alleged accident until the Plaintiff filed a lawsuit against me.

Further the Affiant saith not.

_Adrian Bounds_

**ADRIAN L. BOUNDS**
Former SAIA line-haul driver and a Defendant

STATE OF TEXAS

COUNTY OF Harris

Personally appeared before me, the undersigned authority, **ADRIAN L. BOUNDS** who being by me first duly sworn, did depose and say that he has read the above and foregoing Affidavit and that the facts stated therein are true and correct.

SUBSCRIBED AND SWORN TO before me on this the 20th day of February, 2008

Elizabeth Nicole Ferguson

Notary Public
My Commission Expires 10-11-2008

ELIZABETH NICOLE FERGUSON
Notary Public, State of Texas
Commission Expires 10-11-08

Prepared By:

/s/ K. Amanda Herndon
K. AMANDA HERNDON    (HER048)
Attorney for Defendant, SAIA Motor Freight Line, LLC

OF COUNSEL:

LYONS, PIPES & COOK, P.C.
2 North Royal Street (36602)
P.O. Box 2727
Mobile, AL 36652
P: (251) 432-4481
F: (251) 433-1820
Email: KAH@LPClaw.com



3345  FULL  LINE  HSI
BOUNDS,ADRIAN L          HSA017
        DRIVER,LH TEAM,PSI
0000 0000 0000 0000 0000 0000 0000
PAY PERIOD ENDING

## OFFICIAL DELUXE COPY

# DRIVER'S DAILY LOG

PRESCRIBED BY FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION
U.S. DEPARTMENT OF TRANSPORTATION



MONTH: *December*    YEAR: *2005*

DRIVER: *Adrian Bounds*    CARRIER: *Saia*

Deramus v. Saia
Saia-0555

© Copyright 2003 J.J. KELLER & ASSOCIATES, INC., Neenah, WI • USA • (800) 327-6868 • www.jjkeller.com • Printed in the United States



EXHIBIT
E



**DRIVER'S DAILY LOG**
(24 HOURS)

Will be Scanned
Please Print Clearly Within the Boxes

Form 0801

CARRIER NAME & ADDRESS   **SAIA, INC.**
P.O. Box A, Station One - Houma, LA 70363

Month  Day  Year   Total Miles Driving Today
12 - 1 - 05     645

Tractor Number     Driver's ID / Code
04981

Trailer Number     Co-Driver's ID / Code
284464

I certify these entries are true and correct   Driver's Signature in Full

Co-Driver's Name   PHAD RICHARD

CITY & STATE OF HOME TERMINAL   HOUSTON TX

Manifest Numbers   236.23768, 236.23706, 14452405, 14452225

**Original** File at home terminal
**Duplicate** Driver retains in his/her possession for eight days

USE TIME STANDARD AT HOME TERMINAL
© Copyright 2003 & Published by J. J. KELLER & ASSOCIATES, INC., Neenah, WI • (800) 327-6868 • Printed in USA

Deramus v. Saia
**Saia-0559**

TOTAL HOURS
11.25
10.75
2
2.4
12.78
70
32.75
32.25
12.75



DRIVER'S DAILY LOG
(24 HOURS)

Form 0801

Will be Scanned
Please Print Clearly Within the Boxes

CARRIER NAME & ADDRESS    SAIA, INC.
P.O. Box A, Station One - Houma, LA 70363

Month 11 — Day 2 — Year 05    Total Miles Driving Today 540

Tractor Number  04781
Trailer Number  282094
  10680-281372

Driver's ID / Code  29655
Co-Driver's ID / Code  29656

I certify these entries are true and correct

Driver's Signature in Full  Andrew Bound
Co-Driver's Name  CHAD RICHARD

TOTAL HOURS
13.25
9
1.75
24

REMARKS:
287487
  10680-281747
281842
  10680-282046
HOUSTON, TX
CITY & STATE OF HOME TERMINAL

Deramus v. Saia
Saia-0560

Manifest Numbers  1445 2408, 1445 2229, 25871445, 2587115 08, 23627547, 23627607

70
48.50
10.75
10.75

Original  File at home terminal
Duplicate  Driver retains in his/her possession for eight days

USE TIME STANDARD AT HOME TERMINAL
© Copyright 2003 & Published by J. J. KELLER & ASSOCIATES, INC., Neenah, WI • (800) 327-6868 • Printed in USA



Deramus v. Saia
Saia-0561

DRIVER'S DAILY LOG
(24 HOURS)

Form 0601

Will be Scanned
Please Print Clearly Within the Boxes

CARRIER NAME & ADDRESS

SAIA, INC.
P.O. Box A, Station One - Houma, LA 70363

12 - 4 - 05

Driver's ID / Code

24655

I certify these entries are true and correct

TOTAL HOURS

1: OFF DUTY
2: SLEEPER
3: DRIVING
4: ON DUTY (NOT DRIVING)

REMARKS:

Deramus v. Saia
Saia-0562

HOUSTON, TX
CITY & STATE OF HOME TERMINAL

OFF DUTY

Original File at home terminal
Duplicate Driver retains in his/her possession for eight days

USE TIME STANDARD AT HOME TERMINAL
© Copyright 2003 & Published by J. J. KELLER & ASSOCIATES, INC., Neenah, WI • (800) 327-6868 • Printed in USA



Deramus v. Saia
**Saia-0563**

Form 0801

**DRIVER'S DAILY LOG**
(24 HOURS)

Will be Scanned
Please Print Clearly Within the Boxes

CARRIER NAME & ADDRESS

**SAIA, INC.**
P.O. Box A, Station One - Houma, LA 70363

Month  Day  Year
11 - 6 - 05

Total Miles Driving Today
555

Tractor Number
04981

Driver's ID / Code
29655

I certify these entries are true and correct.

Driver's Signature in Full

Trailer Number
281819
101366-281319

Co-Driver's ID / Code
29686

Co-Driver's Name
CHAD RICHARD

List Hours Worked Last 7 Days
**IMPORTANT!**

| | TOTAL HOURS | |
|---|---|---|
| 1: OFF DUTY | 11. | |
| 2: SLEEPER | | |
| 3: DRIVING | 9.25 | |
| 4: ON DUTY (NOT DRIVING) | 3.75 | |

13.35
13.75
.75
13.35
11.00
0

Yesterday

24
70

13

13

57

REMARKS:

285288
101366-28480
282937
101366-282085

HOUSTON, TV

Deramus v. Saia
**Saia-0564**

09502762V

CITY & STATE OF HOME TERMINAL

USE TIME STANDARD AT HOME TERMINAL

Manifest Numbers
23625044, 221367136, D46875842, 040875355, NA153237

# of Days of Duty Includes

13

Pre-Trip Inspection Signed

13

Post-Trip Inspection Signed

☐ **Original** File at home terminal.
☐ **Duplicate** Driver retains in his/her possession for eight days.

© Copyright 2003 & Published by J. J. KELLER & ASSOCIATES, INC., Neenah, WI • (800) 327-6868 • Printed in USA



Deramus v. Saia
Saia-0565



Deramus v. Saia
Saia-0566

Form 0801

**DRIVER'S DAILY LOG**
(24 HOURS)

Will be Scanned
Please Print Clearly Within the Boxes

| Month | Day | Year | Total Miles Driving Today |
|---|---|---|---|
| 12 | 9 | 05 | 540 |

CARRIER
NAME &
ADDRESS

**SAIA, INC.**
P.O. Box A, Station One - Houma, LA 70363

Tractor Number
04781

Driver's ID / Code
29655

I certify these
entries are true
and correct

Driver's Signature in Full

Trailer Number
285204

Co-Driver's ID / Code
29656

Co-Driver's Name
CHAD RICHARDS

10744 - 282921

|  | MID-NIGHT | | | | | | | | | | | | | NOON | | | | | | | | | | | | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1: OFF DUTY | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 2: SLEEPER | | | | | | | | | | | | | | | | | | | | | | | | | | 14 |
| 3: DRIVING | | | | | | | | | | | | | | | | | | | | | | | | | | 9 |
| 4: ON DUTY (NOT DRIVING) | | | | | | | | | | | | | | | | | | | | | | | | | | 1 |

REMARKS:

510802

HOUSTON, TX

**CITY & STATE OF HOME TERMINAL**

Manifest Numbers: 0144538L5, 014454040, 288740R2

Deramus v. Saia
**Saia-0567**

Original  File at home terminal
Duplicate  Driver retains in his/her possession for eight days

USE TIME STANDARD AT HOME TERMINAL
© Copyright 2003 & Published by J. J. KELLER & ASSOCIATES, INC., Neenah, WI • (800) 327-6868 • Printed in USA

List Hours Worked
Last 7 Days
IMPORTANT
Check the box on the
day you started a tour
of duty after having
been off for 34 or more
consecutive hours.

| | | |
|---|---|---|
| 1 | 10.25 | ☐ |
| 2 | 13.50 | ☐ |
| 3 | | ☐ |
| 4 | | ☒ |
| 5 | 13 | ☐ |
| 6 | 14 | ☐ |
| 7 | 14 | ☐ |

Yesterday

24   Total

VA = 25
US = 60
WA = 70

Record Hours Worked
Today. (Add Driving
and On-Duty/Not
Driving status lines)

10

Record Total Hours
You Spend On Today's
Tour of Duty. (Include
break and off-duty
time)

10

51

70

51

19

**DRIVER'S DAILY LOG**
(24 HOURS)

Form 0801

Will be Scanned
Please Print Clearly Within the Boxes

CARRIER
NAME &
ADDRESS

SAIA, INC.
P.O. Box A, Station One - Houma, LA 70363

Month  Day  Year     Total Miles Driving Today

1 2 - 1 0 - 0 5

Tractor Number

0 4 9 8 1

Driver's ID / Code

2 9 6 3 5

I certify these
entries are true
and correct

Driver's Signature in Full

Trailer Number

5 3 0 8 0 2

Co-Driver's ID / Code

2 9 6 5 6

Co-Driver's Name

CHAD RICHARD

List Hours Worked
Last 7 Days

**IMPORTANT!**
Check the box on the
day you started a tour
of duty after having
been off for 24 or more
consecutive hours.

1    11 · 55    ☐
2    · O    ☐
3    · O    ☑
4    · 13    ☐
5    11    ☐
6    · O    ☐
7    · 10    ☐
     Yesterday

| | NOON | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | MID-NIGHT | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1: OFF DUTY | | | | | | | | | | | | | | | | | | | | | | | | | 22 · 50 |
| 2: SLEEPER | | | | | | | | | | | | | | | | | | | | | | | | | 1 · 50 |
| 3: DRIVING | | | | | | | | | | | | | | | | | | | | | | | | | |
| 4: ON DUTY (NOT DRIVING) | | | | | | | | | | | | | | | | | | | | | | | | | |

REMARKS:

2 · 4   1/4 = 26 1/2 = 60 3/4 = 76

Record Hours Worked
Today. (Add Driving
and On-Duty/Not
Driving status lines)

81

• (70 Hour)/
8 Day Rule/

70

Subtract Total
Hours Worked
As Calculated
Above From 70

81

Record Total Hours
You Spent On Today's
Tour of Duty. (Include
break and off-duty
time)

O

Equals Total
Hours Available
To Work Within
70 Hour/8 Day
Rule

19

CITY & STATE OF HOME TERMINAL

HOUSTON, TX

Manifest
Number

2597 4412

If you exceed 14 hours in one
tour of duty you must explain
your reason in the
Remarks Section

Deramus v. Sala

**Saia-0568**

# of Days Off
Duty Includes
Today

2

Pre-Trip Inspection Signed

O

Post-Trip Inspection Signed

USE TIME STANDARD AT HOME TERMINAL
© Copyright 2003 & Published by J. J. KELLER & ASSOCIATES, INC., Neenah, WI • (800) 327-6868 • Printed in USA

**Original** File at home terminal
**Duplicate** Driver retains in his/her possession for eight days

BOUND EDGE

Form 0801

**DRIVER'S DAILY LOG**
(24 HOURS)

Will be Scanned
Please Print Clearly Within the Boxes

Month  Day  Year   Total Miles Driving Today

12 - 11 - 05

CARRIER
NAME &
ADDRESS

**SAIA, INC.**
P.O. Box A, Station One - Houma, LA 70363

Tractor Number

Driver's ID / Code

29655

Trailer Number

Co-Driver's ID / Code

I certify these
entries are true
and correct

Driver's Signature In Full

Co-Driver's Name

List Hours Worked
Last 7 Days
IMPORTANT!

TOTAL HOURS

| | NOON | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | MID-NIGHT | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1: OFF DUTY | | | | | | | | | | | | | | | | | | | | | | | | | |
| 2: SLEEPER | | | | | | | | | | | | | | | | | | | | | | | | | |
| 3: DRIVING | | | | | | | | | | | | | | | | | | | | | | | | | |
| 4: ON DUTY (NOT DRIVING) | | | | | | | | | | | | | | | | | | | | | | | | | |

REMARKS:

HOUSTON TX

**CITY & STATE OF HOME TERMINAL**

Manifest Numbers

OFF DUTY

Deramus v. Saia
**Saia-0569**

# of Days Off
Duty Include
Today

Pre-Trip Inspection Signed
Post-Trip Inspection Signed

70

**Original** File at home terminal
**Duplicate** Driver retains in his/her possession for eight days

USE TIME STANDARD AT HOME TERMINAL
© Copyright 2003 & Published by J. J. KELLER & ASSOCIATES, INC., Neenah, WI • (800) 327-6868 • Printed In USA

Form 0801

**DRIVER'S DAILY LOG**
(24 HOURS)

Will be Scanned
Please Print Clearly Within the Boxes

Month  Day  Year          Total Miles Driving Today

1 2 - 1 2 - 0 5

Tractor Number

Trailer Number

CARRIER
NAME &
ADDRESS

**SAIA, INC.**
P.O. Box A, Station One - Houma, LA 70363

Driver's ID / Code

2 9 6 5 5

Co-Driver's ID / Code

2 9 6 5 6

I certify these
entries are true
and correct

Driver's Signature in Full

*Adrian Bench*

Co-Driver's Name

*CHAD RICHARD*

List Hours Worked
Last 7 Days

**IMPORTANT!**
Check the box on the
day you started a tour
of duty after having
been off for 34 or more
consecutive hours.

| | | |
|---|---|---|
| 1 | O | ☑ |
| 2 | 13 | ☐ |
| 3 | 14 | ☐ |
| 4 | 14 | ☐ |
| 5 | 10 | ☐ |
| 6 | O | ☐ |
| 7 | O | ☐ |

Yesterday

|  | NOON | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | MID-NIGHT | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1: OFF DUTY | | | | | | | | | | | | | | | | | | | | | | | | | 18 |
| 2: SLEEPER | | | | | | | | | | | | | | | | | | | | | | | | | 6 |
| 3: DRIVING | | | | | | | | | | | | | | | | | | | | | | | | | |
| 4: ON DUTY (NOT DRIVING) | | | | | | | | | | | | | | | | | | | | | | | | | |

REMARKS:     NOON 1 2 3 4 5 6 7 8 9 10 11 MID-NIGHT 1 2 3 4 5 6 7 8 9 10 11

*Houston TX*
*Today Coder*

*HOUSTON TX*

CITY & STATE OF HOME TERMINAL

Manifest
Numbers

*OFF DUTY*

Deramus v. Saia

**Saia-0570**

# of Days Off
Duty includes
Today     2

1K = 25
1/2 = 50
3/4 = 75

Record Hours Worked
Today. (Add Driving
and On-Duty/Not
Driving status lines)     2 4

Record Total Hours
You Spent On Today's
Tour of Duty. (Include
break and off-duty
time)     51

70

51

Record Total
Hours Available
To Work Within
(X Hours) Day
Rule     1 9

Pre-Trip Inspection Signed

Post-Trip Inspection Signed     12

Record The
Total Hours
Worked Last 7
Days. (If your
disallow one of
the boxes
above, add the
hours from the
day (day) here)

+ (70 Hour/8
Day Rule)

Subtract Total
Hours Worked
As Calculated
Above From 70

Equals Total
Hours Available
To Work Within
(X Hour/8 Day
Rule)

If you crossed 14 boxes in one
tour of duty you must explain
your reason in the
Remarks Section

**Original** File at home terminal
**Duplicate** Driver retains in his/her possession for eight days

USE TIME STANDARD AT HOME TERMINAL
© Copyright 2003 & Published by J. J. KELLER & ASSOCIATES, INC., Neenah, WI • (800) 327-6868 • Printed in USA



Deramus v. Saia
Saia-0571

### IN THE CIRCUIT COURT OF AUTAUGA COUNTY, ALABAMA

LEAH A. DERAMUS,                              *

     **Plaintiff,**                              *     **CASE NO. 2007-9001-32 00**

                                   *

**SAIA MOTOR FREIGHT LINE, LLC,**

     **Defendant**

**STATE OF GEORGIA**

**COUNTY OF** Futon

### AFFIDAVIT OF THOMAS HASSARD

       BEFORE ME, the undersigned Notary Public in and for said County and said State did personally appear Thomas Hassard, who upon oath did depose and say as follows:

       1.    My name is Thomas Hassard a/k/a Tim Hassard. I am the Atlanta Regional Operations Manager for SAIA Motor Freight Line, LLC ("SAIA"). SAIA's Birmingham Terminal Manager and Montgomery Terminal Manager, Marvin Harris ("Harris"), report to me. I am over the age of twenty-one (21) years and have personal knowledge of the facts set forth in this Affidavit. I am competent to make this Affidavit and competent to testify in court if called upon to do so. I am authorized by SAIA to give this Affidavit. The facts contained herein are true and correct.

       2.    Adrian L. Bounds ("Bounds"), in December of 2005 was a line haul driver based out of the Houston, Texas Region. Therefore, Harris nor I had any management responsibility for Bounds. The parties with management responsibility for Bounds would have been his originating terminal manager and line-haul manager out of the Houston terminal.

       3.    Since Harris had no control over Bounds, it is fraudulent for Harris to be named defendant in the case.

       4.    SAIA is a Louisiana limited liability corporation with its principal headquarters located at 11465 Johns Creek Park, Johns Creek, Georgia. I have been employed with SAIA for _____ years. During my employment with SAIA, it has always been a citizen of Louisiana, with its principal headquarters in Georgia. Please see Secretary of State filings attached hereto as Exhibit "A".

       5.    During my employment with SAIA I have attended meetings with other Regional Managers at our headquarters in Georgia. The Atlanta headquarters is the



EXHIBIT
F
Blumberg No. 5119

location where our CEO, Rick O'Dell, our CFO, Jim Darby, and VP of Operations, Tony Albanese, all reside and work.

      6.     SAIA has never been a citizen of Alabama. However, it does maintain five (5) of its 150 terminals in Alabama.

      7.     All properly named parties are citizens of different states. Therefore, this matter should be heard in federal court.

      Further the Affiant saith not.

**THOMAS HASSARD a/k/a TIM HASSARD**
Atlanta Regional Operations Manager for
SAIA Motor Freight Line, LLC.

STATE OF GEORGIA

COUNTY OF _Fulton_

      Personally appeared before me, the undersigned authority, **THOMAS HASSARD a/k/a TIM HASSARD**, who being by me first duly sworn, did depose and say that he has read the above and foregoing Affidavit and that the facts stated therein are true and correct.

      SUBSCRIBED AND SWORN TO before me on this the _8_ day of _JANUARY_, 2008

Notary Public
My Commission Expires

Notary Public, Fulton County, Georgia
My Commission Expires Nov. 12, 2011

Affidavit_of_Thomas_Hassard_(00494114)[1]/dln    2

Prepared By:

*/s/ K. Amanda Herndon*
COOPER C. THURBER      (THU002)
K. AMANDA HERNDON      (HER048)
Attorneys for Defendant, SAIA Motor Freight Line, LLC

OF COUNSEL:

LYONS, PIPES & COOK, P.C.
2 North Royal Street (36602)
P.O. Box 2727
Mobile, AL  36652
P: (251) 432-4481
F: (251) 433-1820
Email: CCT@LPClaw.com
           KAH@LPClaw.com